IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

ARVIN COLLINS,

                              Plaintiff,

                                                    Civil Action No.
           vs.                                      9:08-CV-470 (TJM/DEP)

DALE ARTUS, Superintendent,
Clinton Correctional Facility, *et al.*,

                              Defendants.

─────────────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

ARVIN COLLINS, *Pro Se*
01-A-2387
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

FOR DEFENDANTS:

HON. ANDREW M. CUOMO                  RICHARD LOMBARDO, ESQ.
Office of Attorney General            Assistant Attorney General
State of New York
The Capitol
Litigation Bureau
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Arvin Collins, a New York State prison inmate who is proceeding *pro se* and *in forma paupers,* has commenced this action pursuant to 42 U.S.C. § 1983 claiming deprivation of his civil rights.  In his complaint, plaintiff asserts that he was denied adequate medical treatment for an injury to his right wrist and made to perform prison work functions despite the pain resulting from that condition, all in violation of his right to be free from cruel and unusual punishment as guaranteed under the Eighth Amendment to the United States Constitution.  As relief, plaintiff's complaint seeks money damages against each of the three defendants, who are named both individually and in their official capacities.

In response to plaintiff's complaint, defendants have filed two separate motions seeking dismissal of plaintiff's claims for failure to state a cause of action upon which relief may be granted.  In their motions, defendants assert that plaintiff cannot establish the existence of a serious medical need of constitutional significance, and that his claims represent little more than disagreement with the course of treatment followed by prison officials, a matter not actionable under section 1983.  Defendants additionally assert their entitlement to qualified immunity from suit, based

2

upon the circumstances presented.  Having carefully reviewed plaintiff's

complaint together with the attached exhibits, I recommend that

defendants' motions be granted, with leave to replead.

I.    BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the care and custody of the

New York State Department of Correctional Services (the "DOCS"); at the

times relevant to his claims, plaintiff was designated to the Clinton

Correctional Facility ("Clinton"), located in Dannemora, New York.  *See*

*generally* Complaint (Dkt. No. 1).  On July 3, 2007, while working as a

porter at the facility, plaintiff claims to have injured his right wrist while

lifting a laundry bag at the direction of a member of corrections staff.

Complaint (Dkt. No. 1) ¶ 6.  Plaintiff's subsequent request that he be

allowed to discontinue his work and report to emergency sick call to secure

treatment for his wrist was denied, and he was instead advised by

_____

[1]    In light of the procedural posture of this case, the following recitation is
drawn principally from plaintiff's complaint, the contents of which have been
accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,*
__U.S. __, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, __
U.S. __, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546,
546, 84 S. Ct. 1733, 1734 (1964).  Portions of the background description which
follows have been derived from the exhibits attached to plaintiff's complaint, which
may also properly be considered in connection with a dismissal motion.  *See Cortec
Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*,
503 U.S. 960, 112 S. Ct. 1561 (1992); *see also Samuels v. Air Transp. Local 504*,
992 F.2d 12, 15 (2d Cir. 1993).

defendant Mark Orzech, a corrections officer assigned to the Clinton H-Block, to apply for sick call the following morning.[2]  *Id.* ¶¶ 6, 7, 22. Plaintiff's wrist was examined on July 31, 2007, at which time no signs of trauma or inflammation were noted; following that exam, Collins was issued an ace bandage for wrist support in order to decrease swelling, and given Ibuprofen for pain.  Complaint (Dkt. No. 1) ¶ 8 and Exh. 3.

Plaintiff was seen intermittently by various medical personnel at Clinton, including defendant Blaise, following the July 31, 2007 visit to the prison infirmary, complaining of various medical conditions, including on occasion his wrist.  *See* Complaint (Dkt. No. 1) ¶¶ 8, 11, 12 and Exhs. 1, 3-

---

[2]   While plaintiff initially listed one of the three defendants in the caption of his complaint as "R. Saat, B-Officer UH Block", in the body of the complaint plaintiff made a handwritten notation reflecting that the defendant's name was actually "R. Orzech".  *See* Complaint (Dkt. No. 1) ¶ 4.  The court therefore substituted defendant R. Orzech in the place of defendant R. Saat where referenced in plaintiff's complaint, and the docket sheet was adjusted to reflect this substitution. *See* Order Dated May 22, 2008 (Dkt. No. 5) at p. 2 n. 1.

As a result of efforts to serve that defendant, the court and plaintiff were notified that there is no Corrections Officer R. Orzech assigned to work at Clinton, although there is a corrections officer named Mark Orzech at the facility, and he was assigned to work in the H-Block at the relevant times.  *See* Dkt. No. 19.  That individual has since acknowledged service of the summons and complaint and joined in an earlier motion, filed on behalf of defendants Elizabeth Blaise and Dale Artus, seeking dismissal of plaintiff's complaint.  Dkt. Nos. 23, 26.  The court will therefore further order that plaintiff's complaint be considered to have been amended and that defendant Mark Orzech be substituted in the place of defendant R. Orzech wherever that defendant is referenced in the complaint, and the clerk will be directed to reflect this substitution on the docket sheet.

10.  During many of those visits plaintiff was provided with a soft wrist splint and corresponding permit for its use, and was offered over-the-counter analgesics for pain.[3]  *See id.* The notations associated with those visits typically reflect no evidence of swelling, inflammation, or adverse effect on plaintiff's range of motion.  *Id.* Exhs. 1, 9-10.  An x-ray taken on October 16, 2007 revealed no acute condition, and was characterized by medical personnel at the facility as "normal".  *Id.* Exhs. 1, 2, 9-10, and 17.

In January of 2008, plaintiff was sent to Alice Hyde Medical Center for an outside evaluation of his wrist condition.  Complaint (Dkt. No. 1) Exh. 16.  In a report of his examination, consultant Dr. Marco R. Berard noted that plaintiff appeared to have a "right wrist ganglion cyst" which should be surgically removed, adding that while the tumor appeared to be the source of some pain, there was otherwise no cellulitis, redness, skin breakdown, numbness, tingling, or injury associated with the condition.  *Id.  See also* Complaint (Dkt. No. 1) Exh. 17.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on May 1, 2008.  Dkt. No. 1.  In his

_____

[3]      On August 21, 2007, plaintiff was seen complaining of persistent wrist pain and congestion.  Complaint (Dkt. No. 1) Exh. 3.  On that occasion, plaintiff refused an offer of Ibuprofen.  *Id.*

complaint plaintiff has named three defendants, including Dale Artus, the superintendent at Clinton; E. Blaise, a registered nurse employed at the facility; and Corrections Officer Mark Orzech, and asserts that each of the three defendants was deliberately indifferent to his wrist condition.  *Id.*

On August 8, 2008, defendants Artus and Blaise moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seeking dismissal of plaintiff's claims for failure to state a cause of action upon which relief may be granted.  Dkt. No. 13.  In their motion, those two defendants argue that plaintiff's complaint fails to establish either the existence of a serious medical need or their deliberate indifference to any such alleged need, and further assert their entitlement to qualified immunity.  *Id.*  A second dismissal motion was filed on behalf of defendant Mark Orzech, following his acknowledgment of service in the case, echoing those arguments.  Dkt. No. 26.  Plaintiff has since responded in opposition to both motions, Dkt. No. 28, which are now ripe for determination and have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

A.    Standard of Review

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements.  Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964) (quotations and citations omitted); *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible").  Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim.  *Twombly*, 127 S. Ct. at 1969

7

(observing that the Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957) "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party.  *Cooper*, 378 U.S. at 546, 84 S. Ct. at 1734; *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).  The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is ultimately likely to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (quotations and citations omitted).  Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the

elements of his or her claim.  *See Twombly*, 127 S. Ct. at 1969, 1974; *see also Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct at 1974) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'").  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 127 S. Ct. at 2200  (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976)) ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (internal quotations omitted); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.) (citation omitted).  In the event of a perceived

deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

      B.    <u>Plaintiff's Deliberate Indifference Claim</u>

     At the heart of this action are plaintiff's claims that defendant Blaise, a prison nurse, failed to properly treat his wrist condition and that when reviewing a grievance concerning the matter, Superintendent Artus failed to remedy the violation.  *See* Complaint (Dkt. No. 1) ¶¶ 21, 23.  Plaintiff also maintains that defendant Orzech, a corrections officer, was deliberately indifferent to his medical condition when he required Collins to lift objects as part of his porter responsibilities, and denied a request that he be excused from work to attend emergency sick call.  *Id.* ¶ 22. Defendants maintain that these allegations, even accepted as true, fail to support an Eighth Amendment claim.  *See* Defendants' Motions (Dkt. Nos. 13, 26).

     The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and

10

wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle,* 429 U.S. at 103, 104, 97 S. Ct. at 290, 291 (quotations and citations omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle,*  429 U.S. at 103, 97 S. Ct. at 290).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; accordingly, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing, *inter alia*, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).  A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement; the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference."  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (citations omitted).

### 1.   Serious Medical Need

In order to state a medical indifference claim under the Eighth

Amendment, a plaintiff must allege a deprivation involving a medical need

which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*,

37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson*, 501 U.S. at 298, 111 S. Ct.

at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S.

Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it

presents "'a condition of urgency' that may result in 'degeneration' or

'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(citations omitted).  A serious medical need can also exist where "'failure to

treat a prisoner's condition could result in further significant injury or the

unnecessary and wanton infliction of pain'"; since medical conditions vary

in severity, a decision to leave a condition untreated may or may not be

unconstitutional, depending on the facts.  *Harrison v. Barkley*, 219 F.3d

132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*, 143 F.3d at 702).

Relevant factors informing this determination include whether the plaintiff

suffers from an injury that a "'reasonable doctor or patient would find

important and worthy of comment or treatment'", a condition that

"'significantly affects'" a prisoner's daily activities, or "'the existence of

chronic and substantial pain.'" *Chance*, 143 F.3d at 701 (citation omitted);

*LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *3

(N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

Plaintiff's own complaint and supporting exhibits reveal that despite

his claim of persistent pain to his right wrist, x-rays taken on October 16,

2007 failed to reveal any abnormality.  Complaint (Dkt. No. 1) ¶ 18 and

Exhs. 1, 2, 9-10, 17.  While it is true that a subsequent pre-operative

examination report dated January 4, 2008 reveals the presence of a cyst, it

also reflects "[n]o injury" advising that surgery would be performed to

remove the lump, characterized as a "soft tissue tumor", and have it

forwarded to pathology for analysis.  *Id.* Exh. 16.  Plaintiff's complaint fails

to allege that his condition, if left untreated, could result in substantial risk

of degeneration or extreme pain.  Indeed, plaintiff's efforts to obtain

treatment for his wrist pain over time were sporadic, at best, and included

both his rejection of Ibuprofen for pain and an indication in a report of one

such medical visit that he was an inmate porter and did not wish to have

time off from his position based upon his wrist condition.  *See* Complaint

(Dkt. No. 1) Exh. 3.

Under these circumstances, accepting plaintiff's allegations as true,

no reasonable factfinder could conclude that his wrist condition presented a "condition of urgency" which could result in either "degeneration" and "extreme pain". *See Green v. Senkowski*, 100 F. App'x 45, 46-47 (2d Cir. 2004) (finding that the plaintiff had not established that he suffered from a serious medical condition where he received only mild, over-the-counter pain medication for his sporadic complaints of wrist pain and was never diagnosed with a chronic or severe wrist condition); *Bennett v. Hunter*, No. 9:02-CV-1365, 2006 WL 1174309, at *3 (N.D.N.Y. May 1, 2006) (Scullin, S.J. and Lowe, M.J.) (holding plaintiff's complaints of pain from a pinched nerve in his wrist did not constitute a serious medical need); *see also Miles v. County of Broome*, No. 3:04-CV-1147, 2006 WL 561247, at *1, *7 (N.D.N.Y. March 6, 2006) (McAvoy, S.J.) (finding it "highly dubious that [p]laintiff [could] establish a sufficiently serious medical need" where his medical records indicate there was no swelling or deformity and full range of motion in his wrist, plaintiff was given only over-the-counter medication for his pain, and there was no evidence that his wrist condition was likely to cause death or degeneration).   I therefore conclude that plaintiff's complaint fails to allege the existence of a serious medical condition of constitutional proportions.

2.    Deliberate Indifference

In their motion, defendants maintain that even if plaintiff's wrist condition were found to rise to a level of constitutional significance, his allegations are nonetheless insufficient to establish their deliberate indifference to that condition.

Deliberate indifference, in a constitutional sense, exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979); *Waldo*, 1998 WL 713809, at *2 (same).  It should be noted that the Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question of what diagnostic techniques and treatments should be administered to an inmate is a "classic example of a matter for medical judgment" and accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients.  *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703 (citation omitted); *Rosales v. Coughlin*, 10 F.

Supp. 2d 261, 264 (W.D.N.Y. 1998) (citation omitted).

a.   Defendant Blaise

Both plaintiff's complaint and the supporting exhibits, including relevant excerpts from plaintiff's medical records, reveal that his condition was treated by defendant Blaise and others at the facility.  Those materials reflect, for example, that plaintiff was seen by defendant Blaise on more than one occasion, and that during those visits she examined the plaintiff's wrist and provided treatment, including through use of a soft splint and over-the-counter pain medications.  *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 11-12 and Exhs. 1, 3-10.  The records also reveal that defendant Blaise was acutely aware of plaintiff's condition, and interested in obtaining proper treatment for it.  Indeed, in a note dated November 20, 2007, defendant Blaise reported that the plaintiff had been complaining of wrist pain since July, urging prison medical officials to put him at the top of the list of inmates to be seen medically.[4]  Complaint (Dkt. No. 1) Exhs. 9-10.

Despite these facts, plaintiff alleges in wholly conclusory fashion that defendant Blaise was negligent and did not "appropriately treat" his injury.

_____

    [4]    Defendant Blaise's request appears to have been effective, since plaintiff was seen one week later by a nurse practitioner.  Complaint (Dkt. No. 1) Exhs. 9-10.

*See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 15, 23.  It is well-established that a

claim that negligence or medical malpractice has occurred does not

support a medical indifference cause of action under 42 U.S.C. § 1983.

*Estelle*, 429 U.S. at 105-07, 97 S. Ct. at 292-93; *Chance*, 143 F.3d at 703

(citations omitted); *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992),

*aff'd*, 970 F.2d 896 (2d Cir. 1992), *cert. denied*, 506 U.S. 1040, 113 S. Ct.

828 (1992).  Similarly, a mere disagreement by a prison inmate with a

course of treatment would not suffice to establish such a cause of action.

*Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703

(citation omitted); *Rosales*, 10 F. Supp. 2d at 264 (citation omitted).  To the

extent that plaintiff may be claiming that as an inmate he is entitled to be

seen by a physician at his request, that contention does not support a

constitutional claim, since there is no such requirement imposed under

Eighth Amendment jurisprudence.  *See Webber v. Hammack*, 973 F.

Supp. 116, 123 (N.D.N.Y. 1997) (Scullin, J.).

A careful review of the record reflects that plaintiff's wrist was in fact

treated by prison medical officials, including through use of a wrist splint,

the offering of analgesics to ease his pain, an x-ray taken on October 16,

2007, an examination on November 27, 2007 by a nurse practitioner, and a

referral to an outside source in January of 2008. I am therefore unable to discern any cognizable deliberate indifference to plaintiff's wrist condition by medical officials at Clinton generally, and in particular on the part of defendant Blaise.

b.    Defendant Artus

It is well-established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citations omitted); *Wright* v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted).  A supervisory official can, however, be liable in one of several ways, including when he or she 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007) (citation omitted); *see also Richardson*, 347 F.3d at 435 (citation omitted); *Wright*, 21 F.3d at 501

(citation omitted); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citation omitted).

Defendants argue that the role of Sergeant Artus in the relevant events is limited to his having denied plaintiff's grievance regarding his medical treatment, and that such conduct does not suffice to establish his personal involvement in the constitutional violation alleged.  In support of their argument, defendants offer *Cancel v. Goord,* No. 00 CIV 2042, 2001 WL 303713, at *8-9 (S.D.N.Y. Mar. 29, 2001) by analogy.  *See* Defendants' Motion (Dkt. No. 13) at p. 9.  That case, however, involved supervisory employees who ignored a letter from the inmate plaintiff complaining of the condition at issue and requesting an investigation, the court concluding that this fact alone did not establish liability.  *See Cancel*, 2001 WL 303713.  Notably, the court in *Cancel* observed that the plaintiff's complaint contained no other allegations regarding the supervisory defendants' participation in the violations alleged, "either through direct participation, maintenance of a policy[,] or deliberate disregard for [p]laintiffs' rights."  *Id.* at *9.

The circumstances presented in *Cancel* are materially distinguishable from the present situation.  In this instance it could be said

that through processing plaintiff's grievance, defendant Artus became aware of an ongoing violation which, by virtue of his position as the Superintendent of Clinton, he was empowered to remedy. I therefore recommend against acceptance of defendants' argument regarding the lack of personal involvement of defendant Artus.

This notwithstanding, I nonetheless recommend dismissal of plaintiff's claims against defendant Artus. The Superintendent's involvement in the matters set forth in plaintiff's complaint is limited to the processing of a grievance and the issuance of a response on November 5, 2007. *See* Plaintiff's Complaint (Dkt. No. 1) Exh. 2. By that time, as noted in that defendant's grievance denial, plaintiff had been approved for evaluation by a facility nurse practitioner; an x-ray of his right wrist had been taken; and soft splints, ace bandages, and over-the-counter pain medications had been provided to him. *Id.* Noting that the x-ray revealed no acute problems, defendant Artus denied plaintiff's grievance but encouraged him "to continue his over the counter pain medication and follow up with sick call if pain worsens." *Id.* Since I have already found that neither defendant Blaise nor any other medical personnel at the facility were deliberately indifferent toward the plaintiff by failing to provide plaintiff

necessary treatment for a serious medical condition, it follows that defendant Artus similarly cannot be held accountable for awareness of a constitutional violation without taking measures to remedy it.  *See Tomarkin v. Ward*, 534 F. Supp. 1224, 1232-33 (S.D.N.Y. 1982).

### 3.    Defendant Orzech

Plaintiff's allegations against defendant Orzech are slightly different from those against his two co-defendants.  Plaintiff maintains that Orzech was deliberately indifferent to his medical condition by forcing him to engage in lifting during the course of his prison employment, despite his injury.[5]  *See* Complaint (Dkt. No. 1) ¶ 22.  Since plaintiff has failed to establish the existence of a serious medical condition it follows that defendant Orzech, like his co-defendants, cannot be held accountable for being deliberately indifferent to that condition.

Moreover, plaintiff's allegations fail to establish any deliberate indifference on the part of defendant Orzech.  Lacking in medical training, Orzech appropriately deferred to medical personnel for treatment of plaintiff's medical condition.  *Ross*, 784 F. Supp. at 46 (citing *McEachern v.*

---

[5]    Plaintiff also asserts that Orzech's failed to provide him with appropriate medical treatment.  *See, e.g.*, Complaint (Dkt. No. 1) ¶ 22(b).  Collins' allegations to that effect, however, are extremely conclusory and non-specific.

*Civiletti*, 502 F. Supp. 532, 534 (N.D. Ill. 1980)).  Nowhere in plaintiff's

complaint or in the supporting records is there any indication that he

requested that medical personnel excuse him from working in his porter

position, and in fact an entry dated July 31, 2007 reflects that he expressed

a desire not to have time off from his porter position, despite his wrist

condition.  *See* Complaint (Dkt. No. 1) Exh. 3.  In light of these

circumstances, defendant Orzech was presented with no facts from which

he could reasonably conclude that plaintiff suffered from a serious medical

condition, nor is there any indication that defendant Orzech demonstrated

deliberate indifference to such condition.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint, which asserts a claim of deliberate indifference

against individual DOCS workers employed in three separate and distinct

positions, is deficient both because it fails to disclose the existence of a

medical condition of constitutional significance and because his

allegations, even when accepted as true and interpreted in his favor, fail to

reflect deliberate indifference to his condition, instead merely representing

a disagreement with the course of treatment and his dissatisfaction with

not having been seen sooner by a physician.  Since plaintiff's complaint

fails to state a plausible constitutional claim against any of the three named defendants, it is therefore hereby respectfully

RECOMMENDED that defendants' motions for dismissal of plaintiff's claims for failure to state a cause of action upon which relief may be awarded (Dkt. Nos. 13, 26) be GRANTED, and that plaintiff's complaint (Dkt. No. 1) be DISMISSED in all respects, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      October 31, 2008
            Syracuse, NY